### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TERESA D. CARTER,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:13-cv-550

Litkovitz, M.J.

**ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 15), the Commissioner's response in opposition (Doc. 20), and plaintiff's reply memorandum (Doc. 21).

**I. Procedural Background**

Plaintiff protectively filed applications for DIB and SSI in September 2010, alleging disability since April 1, 2006, due to psychosis, hallucinations, hearing voices, syncope stress induced seizures, kidney disorder, fibromyalgia, Interstim implant in back, chronic back pain due to disc problems, chronic kidney stones, depression, anxiety, osteoporosis, blood pressure problems, and neck pain. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) John S. Pope. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On June 21, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4) (i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2004).   Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy.   *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir.

1999).

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2008.

2. The [plaintiff] has not engaged in substantial gainful activity since April 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: fibromyalgia, orthostatic hypertension, syncope, status post Interstim bladder stimulator implantation, major depressive disorder with psychotic features, generalized anxiety disorder, personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following exceptions: she must never climb ladders, ropes or scaffolds.   She must avoid all exposure to hazards. She is limited to simple, routine work with no more than occasional changes in the work environment and no more than occasional and superficial interaction with others.
6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

_____

[1]Plaintiff's past relevant work was as a general office clerk and customer service representative. (Tr. 30, 72-73, 289-91).

7. The [plaintiff] was born [in] . . . 1971 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from April 1, 2006, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 14-31).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 6,892 light, unskilled jobs in the regional economy as a collator operator, small products assembler, and routing clerk. (Tr. 31, 73).

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff asserts two assignments of error on appeal. First, plaintiff contends the ALJ's residual functional capacity (RFC) formulation does not account for all of the limitations resulting from her severe impairments. Specifically, plaintiff maintains the ALJ failed to account for limitations associated with her deficits in maintaining attention, concentration, persistence and pace and her seizure and syncope disorders. Second, plaintiff argues the ALJ erred in weighing the mental health opinion evidence of record. (Doc. 15). The Court will address this latter argument first.

1. <u>Whether the ALJ erred in weighing the mental health opinions of record</u>.

Plaintiff argues the ALJ erred in weighing the mental health opinions of record.  Plaintiff maintains the ALJ erred by giving "significant weight" to the opinions of the non-examining state agency psychologists but not adopting their opinions in their entirety and, therefore, formulating an RFC that is "significantly less restrictive than that of the state agency psychological experts. . . ."  (Doc. 15 at 15).  Plaintiff further contends the ALJ erred by discounting the opinion of the consultative examining psychologist, Albert Virgil, Ph.D., because the evidence of record does not substantially support the ALJ's conclusion that plaintiff's mental health impairments "improved" after Dr. Virgil's examination.  Lastly, plaintiff asserts the ALJ erred in assessing the opinion evidence from her treating psychiatrist, David Helm, M.D., by failing to explain what weight he was affording the opinion.  Plaintiff further argues the ALJ erred by not contacting Dr. Helm and seeking clarification of his opinion.  (Doc. 15 at 11-20).  For the following reasons, plaintiff's first assignment of error is sustained in part.

a. *The State Agency Psychologists*

At the request of the state agency, the medical evidence was reviewed in December 2010, by Irma Johnston, Psy.D.  (Tr. 96-109).  Dr. Johnston opined that plaintiff had moderate restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation of an extended duration.  (Tr. 104).  Dr. Johnston found plaintiff had moderate limitations in several areas of understanding and memory, concentration and persistence, social interaction, and adaptation, including her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and

concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (Tr. 107-08). Dr. Johnston opined that plaintiff "retains the capacity to carry out instructions for simple repetitive tasks in settings which are routine and relatively static." (Tr. 108). Dr. Johnston further opined that plaintiff retains the capacity to "interact with others infrequently and superficially." (*Id.*).

Kristen Haskins, Psy.D., reviewed the file in June 2011. Dr. Haskins' opinion is essentially the same as Dr. Johnston's regarding the functional limitations plaintiff experiences due to her mental impairments. *See* Tr. 122-24. Similar to Dr. Johnston's opinion regarding plaintiff's RFC, Dr. Haskins opined that plaintiff can "complete simple tasks and a variety of multistep tasks [plaintiff] is well motivated to perform" and "interact with others infrequently and superficially." (Tr. 123-24).

The ALJ gave "significant weight" to the opinions of Drs. Johnston and Haskins "and adopted their findings that plaintiff retained the mental RFC to perform 'simple, routine work with no more than occasional changes in the work environment and no more than occasional and superficial interaction with others.'" (Tr. 15, 29). Plaintiff argues that the ALJ erred by failing "to explain why his [RFC formulation] is significantly less restrictive" than Drs. Johnston or Haskins' or "why he credited some of [their] opinions but not others." (Doc. 15 at 15). The crux of plaintiff's argument is that the ALJ should have incorporated the doctors' specific

findings, e.g., that plaintiff is moderately limited in her ability to perform activities within a schedule, in his RFC formulation. This argument is not well-taken.

Plaintiff has failed to demonstrate how the ALJ's RFC formulation is less restrictive than the RFC assessments put forth by the state agency psychologists. While it is true that the ALJ did not reiterate each specific finding made by Drs. Johnston and Haskins in his decision, his RFC formulation is wholly consistent with their opinions. Dr. Johnston found that plaintiff "retains the capacity to carry out instructions for *simple repetitive tasks* in settings which are *routine* and relatively static" and to "interact with others *infrequently and superficially*" based on the specific limitations and restrictions on concentration, persistence, and social interaction identified earlier in her report. (Tr. 108) (emphasis added). Dr. Haskins similarly concluded that plaintiff retained the RFC to "*complete simple tasks* and a variety of multistep tasks [plaintiff] is well motivated to perform" and to "interact with others *infrequently and superficially*." (Tr. 123-24) (emphasis added). The ALJ incorporated these findings in determining that plaintiff retains the RFC to perform "*simple, routine work* with no more than occasional changes in the work environment and no more than *occasional and superficial* interaction with others." (Tr. 15, 29). Plaintiff has not identified any additional limitations set forth by the state agency psychologists that were not included in the ALJ's RFC formulation nor has she cited to any authority supporting her claim that the ALJ erred by not including a verbatim recitation of their medical opinions.

The Court therefore finds that the ALJ did not err in failing to include the specific findings of the state agency psychologists in formulating plaintiff's RFC.

b. *Dr. Helm, the Treating Psychiatrist*

Plaintiff received mental health treatment at Shawnee Mental Health (SMH) where she

treated with David Helm, M.D., from March 15, 2011 to at least February 28, 2012.  (Tr.

1389-1408, 1446-51).   At her initial diagnostic assessment, plaintiff reported a history of prior

inpatient hospitalizations for psychosis and suicidal ideation including a prior referral to SMH

for inpatient treatment due to suicidal thoughts.  (Tr. 1404, 1407).   Plaintiff reported a

three-year history of auditory hallucinations that tell her to hurt herself; multiple health problems

that required several surgeries; paranoia in public and an inability to leave her house; irritability,

racing thoughts, and anxiety; and lack of motivation.  (Tr. 1407).   The social worker performing

the in-take observed that plaintiff presented with a flat affect, depressed mood, and mistrustful

demeanor.  (Tr. 1405)   Plaintiff was diagnosed with major depressive disorder recurrent,

severe, generalized anxiety disorder, and personality disorder, and was assigned a Global

Assessment of Functioning (GAF) score of 49.[5]  (*Id.*).

Plaintiff reported to SMH for counseling on March 21, 2011, where she discussed her

anxiety about attending the appointment and her counselor noted that plaintiff was agreeable to

engaging in group and community activities.  (Tr. 1403).   Plaintiff did not show up for her

March 29, 2011 counseling appointment.  (Tr. 1402).   The record indicates that plaintiff had a

telephone counseling session on April 1, 2011, during which her individualized service plan

(ISP) was completed.  (Tr. 1401).   On April 8, 2011, plaintiff was contacted by telephone to set

---

[5]A GAF score represents "the clinician's judgment of the individual's overall level of functioning."
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev.
2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,
and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of
severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with
clear expectation of death).  *Id.*  The DSM-IV categorizes individuals with scores of 41 to 50 as having "serious
symptoms . . . or serious impairment in occupational, social, or school functioning."  *Id.* at 32.

up regular counseling sessions and plaintiff was reportedly in high spirits and eager to begin group work. (Tr. 1400). However, plaintiff was again a "no show" to her April 12, 2011 appointment. (Tr. 1399). During a face-to-face counseling session in July 2011, plaintiff requested that she remain an active patient despite her history of "no shows" and asked for a psychiatric referral. (Tr. 1398). Plaintiff's case was terminated on September 6, 2011, but plaintiff requested reinstatement and requested that SMH take over her psychiatric medication management. (Tr. 1396).

Plaintiff saw Dr. Helm on September 20, 2011, for medical-somatic services. (Tr. 1391-92, 1395). Plaintiff reported a reduction in hallucinations but they were still evident and she was still avoidant, distracted, and depressed. (Tr. 1391). Plaintiff further reported that she was anhedonic and had continuing episodes of passing out suddenly. (*Id.*). On mental status examination, Dr. Helm found plaintiff was depressed and dysphoric; her affect was blunted; and she had fair insight and judgment. (*Id.*). Dr. Helm continued to diagnose plaintiff with major depressive disorder, recurrent and severe and with psychotic features, generalized anxiety disorder, and personality disorder. (Tr. 1392). Dr. Helm assigned plaintiff a GAF score of 49 and he changed her medication from Haldol to Risperdal. (*Id.*).

In November 2011, plaintiff reported improvement in side effects with Risperdal, but said she was still having hallucinations "seeing mice/people and they carry on conversations." (Tr. 1451). Plaintiff also reported that she had instances of spacing out and "snapping back" as well as "stress-induced seizures." (*Id.*). Dr. Helm opined that plaintiff needed more frequent therapy sessions and increased her Risperdal and Cymbalta prescriptions. (*Id.*).

10

On December 28, 2011, plaintiff treated at SMH with Patricia D. Sparks MSN, CNP. Plaintiff reported that she reduced her dosage of Cymbalta because she was having pseudo seizures, but now she had problems sleeping and she was depressed.   Nurse Sparks started plaintiff on Seroquel and reduced Cymbalta due to syncope.   (Tr. 1449).

Plaintiff treated with Dr. Helm again on January 31, 2012.   Plaintiff reported that Seroquel was helping her symptoms and she was feeling more comfortable on a daily basis about 70% of the time, but she reported two "staring seizures."   Dr. Helm noted that plaintiff was suffering from poor sleep and had been on many sedatives.   Dr. Helm further noted plaintiff's reported fear of leaving the house and her statement that she would not have anything to live for if she was not successful in seeking disability benefits.   Dr. Helm wrote: "She is not capable of competitive employment due to mood and unreliable mental status.   In addition, this is now causing an agoraphobia."   (Tr. 1448).

In February 2012, plaintiff told Dr. Helm she was suffering from bad hallucinations and suicidal feelings.   Dr. Helm restarted plaintiff on Risperdal and opined that she "has a diagnosis of psychotic disorder NOS and possible dissociative disorder, and these render her unemployable."   (Tr. 1447).

On April 23, 2012, Dr. Helm completed a Mental Assessment of Psychiatric Limitations form.   Dr. Helm opined that plaintiff had a "poor" ability to deal with work stress and to understand, remember, and carry out detailed and complex job instructions.[3]   Dr. Helm rated plaintiff's abilities as "fair" in all other work areas, including her ability to relate to co-workers, deal with the public, use judgment when dealing with the public, behave in an emotionally stable

_____

[3]The form defined the term "poor" as "Ability in this area is usually precluded."   (Tr. 1472).

11

manner, and relate predictably in social situations.[4]   The narrative portions of the opinion

provide as follows:

> [Plaintiff] desires to be social but can become overwhelmed in social settings [at]
> times. She's had several incidents of seizures under stress for which they can't
> find any medical cause. Her ability to concentration [and] maintain attention is
> affected by her intermittent breakthrough periods of psychosis. She can't even
> handle a conversation on the phone when these episodes occur . . . .
>
> [Plaintiff] has memory problems [and] difficulty recalling any great details. She
> remembers her [appointments] here but will occasionally call for clarification.
> Her ability to process information is slow [and] delayed . . . .
>
> [Plaintiff] keeps most [appointments and] takes meds as prescribed. She can be
> uncertain [at] times in social situations especially when experiencing a psychotic
> episode.

(Tr. 1473-74).   Dr. Helm reported that plaintiff had been so limited since at least September

2011.   (Tr. 1472-75).

        The ALJ discussed the evidence from Dr. Helm and found that his opinion regarding

plaintiff's "poor" and "fair" abilities was "problematic."   (Tr. 29).   The ALJ specified that

"[w]here Dr. Helm indicates an agoraphobia and 'reluctance' to leave the home, he then places

her capacity for relating to coworkers, behaving in an emotionally stable manner, relating

predictably in social situations, and demonstrating reliability at 'fair.'"   (*Id.*).   The ALJ

concluded that Dr. Helm's opinions were inconsistent with one another and with the objective

findings.   The ALJ further stated that plaintiff's own reports show that she has improved over

the course of her treatment with Dr. Helm and that her mental status findings are not remarkable

to the extent provided by his medical opinion.   (*Id.*).

---

[4]The term "fair" is defined as "Ability to function in this area is usually satisfactory, but at times is limited
or precluded."   (Tr. 1472).

12

Plaintiff argues that the ALJ erred by discounting Dr. Helm's opinions as they are supported by the full medical record. Plaintiff further argues that the ALJ's decision must be remanded because the ALJ failed to explain what weight, if any, he gave to Dr. Helm's opinions. Plaintiff's arguments are well-taken.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what

13

weight to give the opinion.  *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.   These

factors include the length, nature and extent of the treatment relationship and the frequency of

examination.   20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.

In addition, the ALJ must consider the medical specialty of the source, how well-supported by

evidence the opinion is, how consistent the opinion is with the record as a whole, and other

factors which tend to support or contradict the opinion.   20 C.F.R. §§ 404.1527(c)(3)-(6),

416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'"   *Cole*, 661 F.3d at 937 (citation omitted).  *See also Wilson*, 378 F.3d at 544

(ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion).

Those reasons must be "supported by the evidence in the case record, and must be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight."   *Cole*, 661 F.3d at 937 (citing SSR

96-2p, 1996 WL 374188 (1996)).   This procedural requirement "ensures that the ALJ applies the

treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Gayheart*, 710 F.3d at 544 (quoting *Wilson*, 378 F.3d at 544).

The ALJ erred by failing to articulate what weight, if any, he afforded Dr. Helm's

opinions.   "Even where the administrative law judge determines not to give the opinion of a

treating physician controlling weight, Social Security regulations and the law of the Sixth Circuit

nonetheless require the administrative law judge to determine and articulate on the record the

amount of weight given to the opinion."   *Quattlebaum v. Comm'r of Soc. Sec.*, 850 F. Supp.2d

763, 782 (S.D. Ohio 2011) (citing 20 C.F.R. § 404.1527(d); *Wilson*, 378 F.3d 541)).  *See also*

*Allums v. Comm'r of Soc. Sec.*, 975 F. Supp.2d 823, 830 (N.D. Ohio 2013) ("The ALJ must

assign specific weight to the opinion of each treating source and, if the weight assigned is not

controlling, then give good reasons for not giving those opinions controlling weight.") (citing

*Blakley*, 581 F.3d at 406-07).   As noted by this Court in *Quattlebaum*, Social Security Ruling

96-2p requires an ALJ to specifically weigh the opinions of treating physicians in accordance

with the regulatory factors cited above:

> Adjudicators must remember that a finding that a treating source medical opinion
> is not well-supported by medically acceptable clinical and laboratory
> diagnostic techniques or is inconsistent with the other substantial evidence in the case record
> means only that the opinion is not entitled to 'controlling weight,' *not that the
> opinion should be rejected*.   Treating source medical opinions are still entitled to
> deference and must be weighed using all of the factors provided in 20 C.F.R.
> 404.1527 and 416.927.   *In many cases, a treating source's medical opinion will
> be entitled to the greatest weight and should be adopted, even if it does not meet
> the test for controlling weight.*

850 F. Supp.2d at 782 (quoting SSR 96-2p, 1996 WL 374188 (emphasis added)).  *See also*

*Gayheart*, 710 F.3d at 376.   Contrary to his obligations under the regulations, the ALJ failed to

determine whether Dr. Helm's opinions were to be given controlling weight and, if not, what

weight to assign those opinions given the applicable regulatory factors.  *See Gayheart*, 710 F.3d

at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)).   The ALJ's decision is not "'sufficiently specific

to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's

medical opinion and the reasons for that weight.'"   *Wilson,* 378 F.3d at 544 (quoting SSR 96-2p,

1996 WL 374188, at *5).   *See also Hall v. Commissioner,* 148 Fed. App'x 456, 461 (6th Cir.

2005).   The ALJ's failure to weigh Dr. Helm's opinion at all is reversible error "unless the error

is a harmless *de minimis* procedural violation."   *Blakley*, 581 F.3d at 409 (citing *Wilson*, 378

F.3d at 547) ("For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe [§ 1527(c)(2)] may not warrant reversal.").

The Commissioner asserts that the ALJ's failure to weigh Dr. Helm's opinions is harmless error because the ALJ's decision demonstrates that the treating psychiatrist's opinions were considered and rejected because they were inconsistent with each other and with the objective medical evidence. (Doc. 20 at 7-8). The Court acknowledges that Dr. Helm's opinion appears to suffer from internal inconsistencies. For example, Dr. Helm reported in a progress note that plaintiff had an agoraphobic fear of leaving her house (Tr. 1448) but opined that she had a "fair" ability to relate to coworkers, deal with the public, function independently, and relate predictably in social situations. (Tr. 1472-74). Dr. Helm's progress notes also show that in January 2012 plaintiff reported feeling "much better" on Seroquel. (Tr. 1448). However, Dr. Helm opined three months later that plaintiff's mental impairments and functional limitations precluded her ability to work.

Despite these inconsistencies, the ALJ was still obligated to weigh Dr. Helm's opinion in accordance with Social Security regulations and Sixth Circuit law. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (consistency is only one of several factors to consider in assessing a treating source opinion). *See also Wilson*, 378 F.3d at 544. Moreover, Dr. Helm's opinions are not wholly inconsistent with his treatment notes or the other medical evidence of record. Dr. Helm's finding that plaintiff has a poor ability to deal with work stress is consistent with her history of syncope and pseudo seizures. *See* Tr. 1420 (in February 2012, plaintiff's treating physician Joseph Carducci, M.D., wrote a letter discussing plaintiff's seizure disorder and noted

16

that this condition was not improving nor was it anticipated that it would). Dr. Helm's clinical observations further support his conclusions that plaintiff has preclusive limitations in dealing with work stress due to her mental impairments. *See* Tr. 1391-92 (in September 2011, Dr. Helm found that plaintiff was dysphoric, depressed, and had a blunted affect and plaintiff reported ongoing hallucinations); Tr. 1451 (plaintiff continued to report experiencing hallucinations and "stress-induced seizures" in November 2011 and Dr. Helm recommended additional therapy sessions); Tr. 1448 (Dr. Helm opined in January 2012 that plaintiff was not capable of employment due to her unreliable mental status and agoraphobia); Tr. 1447 (plaintiff continued to report experiencing hallucinations in February 2012 and Dr. Helm determined that her psychotic disorder precluded her from working). Dr. Helm's conclusions are further supported by the medical evidence establishing that plaintiff has been hospitalized on multiple occasions for psychotic episodes (Tr. 294-300,[5] 307-10) and the findings of Dr. Virgil, the consultative examining psychologist, who determined that plaintiff was markedly impaired in her ability to withstand the stress and pressures of daily work activity due to her mood and psychotic disorder features. (Tr. 1353). Given the ample evidence in the record that is consistent with Dr. Helm's opinion, the ALJ should have engaged in the regulatory analysis and clearly stated whether it was entitled to controlling weight and, if not, how much weight to afford the treating psychiatrist's opinion.

Insofar as the ALJ determined that Dr. Helm's conclusions were inconsistent with the

---

[5]In November 2007, plaintiff was hospitalized for psychosis after reporting visual hallucinations of "seeing bugs crawling out of her skin" and attempting "to get them out, leaving [plaintiff] with scars on her chest, hips, and leg. [Plaintiff] also reported an incident 2 weeks [earlier] where she heard her dog barking and was about to get her husband's gun to protect herself, when she called the husband instead and he came home and locked the gun up." (Tr. 299).

objective evidence of record (Tr. 29), a lack of objective medical support does not render Dr.

Helm's opinion patently deficient such that the ALJ's failure to weigh it is excusable. The Sixth

Circuit has explained that "a psychiatric impairment is not as readily amenable to substantiation

by objective laboratory testing as a medical impairment" and "consequently, the diagnostic

techniques employed in the field of psychiatry may be somewhat less tangible than those in the

field of medicine." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989) (citation and

alterations omitted). Rather, when assessing mental health impairments, "clinical and laboratory

data may consist of the diagnosis and observations of professionals trained in the field of

psychopathology." *Id.* (citation omitted). Often in the realm of psychological treatment, the

only evidence available will be the clinical observations made by mental health professionals.

Here, the ALJ did not cite to the specific objective evidence he deemed inconsistent with Dr.

Helm's opinion; thus, the basis for this assertion is unclear.

To the extent the ALJ discounted Dr. Helm's opinion because he found that plaintiff

improved considerably with treatment (Tr. 29), this finding lacks substantial support in the

record. There is no medical opinion in the record supporting this conclusion. In weighing the

medical evidence, "ALJs must not succumb to the temptation to play doctor and make their own

independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th

Cir. 2009). *See also Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 WL 549861, at *7

(S.D. Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute her own medical judgment for

that of a treating physician and may not make her own medical findings."). The ALJ's finding

that plaintiff "shows considerable improvement" when she "is in the appropriate treatment" is

not supported by any medical opinion and, thus, lacks substantial support in the record.

Notably, to support this conclusion the ALJ cited to SMH treatment notes from March 15, 2011. *See* Tr. 29, citing Tr. 1447, 1449.   Yet, contrary to the ALJ's characterization of "improvement," these notes show the opposite: the notes state that plaintiff was "having bad halluc[inations], bugs people hearing voices.   She feels someone may be in this room [during treatment] telling [her] what to say" and she was experiencing increased pseudo seizures due to an increase in medication but when she stopped taking it she became depressed and had difficulty sleeping. (Tr. 1447, 1449).   The evidence cited by the ALJ simply does not support his conclusion.

The Court cannot say that Dr. Helm's opinion "is so patently deficient that the Commissioner could not possibly credit it" so as to excuse the ALJ's failure in this case. *Wilson*, 378 F.3d at 547.   The ALJ's decision in this respect constitutes legal error warranting a reversal and remand of this case for reconsideration of Dr. Helm's treating source opinion as required by the Social Security regulations and Sixth Circuit law.   On remand, the ALJ must make specific determinations as to whether Dr. Helm's opinion is to be given controlling weight and, if not, what weight it should be afforded.

c. *Dr. Virgil, the Consultative Examining Psychologist*

In December 2010, consulting psychologist Dr. Virgil evaluated plaintiff for disability purposes.   (Tr. 1349-53).   Plaintiff reported that she had been diagnosed with psychosis; she suffers from hallucinations, hearing voices, and paranoia; and she has a history of inpatient psychological treatment, including being twice admitted to a psychiatric hospital.   (Tr. 1349-50). Dr. Virgil observed that plaintiff was clean and cooperative.   He also noted borderline judgment ability and guarded prognosis, as well as possible cognitive slippage associated with psychotic illness.   (Tr. 1351).   Dr. Virgil diagnosed plaintiff with major depression, recurrent and severe

19

with psychotic features and anxiety disorder NOS. He assigned plaintiff a GAF score of 38.[6]

(Tr. 1352). Dr. Virgil opined that plaintiff was moderately impaired in her ability to deal with

supervisors and coworkers and to maintain attention, concentration, persistence and pace. (Tr.

1353). He further opined that plaintiff was capable of performing simple and routine activities

of daily living at home, but not in the community. As stated above, Dr. Virgil also determined

plaintiff was markedly impaired in her ability to withstand the stress and pressures associated

with day-to-day work activity, citing mood and psychotic disorder features. (*Id.*).

> The ALJ provided the following discussion of Dr. Virgil's opinion:

> The [state agency psychologists] determined that Dr. Virgil's opinion was an
> overestimate of the severity of [plaintiff]'s restrictions. At this time, the [ALJ]
> must agree. A markedly impaired finding in withstanding stress and pressures is
> inconsistent with [plaintiff]'s presentation throughout this process, including at
> the field office and the hearing. [Dr. Virgil's] examination was also just after
> [plaintiff]'s release from the hospital, before she sought the recommended
> follow-up treatment. When the [plaintiff] is in the appropriate treatment, as
> discussed throughout this decision, she shows considerable improvement.

(Tr. 29).

Plaintiff asserts the ALJ erred in assessing Dr. Virgil's opinion because the medical

record as a whole shows that despite occasionally experiencing partial improvement in her

mental health functioning, she has "ongoing debilitating mental health symptoms occurring on at

least an intermittent basis, such as difficulty leaving the home, psychotic spells, and frequent

episodes of stress-induced syncope." (Doc. 15 at 17). Plaintiff also notes that Dr. Virgil's

opinion is supported by Dr. Helm's finding that she has the equivalent of a marked limitation in

---

[6]The DSM-IV categorizes individuals with scores of 31 to 40 as having some impairment in reality testing
or communication (e.g., speech is at times illogical, obscure, or irrelevant) *or* major impairment in several areas,
such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects
family, and is unable to work). DSM-IV at 32.

dealing with daily workplace stress and pressures. (*Id.* at 17-18). Lastly, plaintiff contends that the ALJ's finding of "improvement" is not a valid basis for discounting Dr. Virgil's opinion given the significant evidence showing that she suffers from severe intermittent symptoms which preclude her ability to work. (*Id.* at 18).

The ALJ's assessment of Dr. Virgil's opinion is deficient for the reasons stated *supra* regarding Dr. Helm's opinion. As with Dr. Helm, the ALJ did not assign any specific weight to Dr. Virgil's opinion but simply stated that his conclusions "overestimate[d]" the severity of plaintiff's impairments. In addition, the ALJ's statement that plaintiff "shows considerable improvement" with treatment is not supported by substantial evidence. (Tr. 29). As explained above, this assertion lacks evidentiary support, is inconsistent with plaintiff's treatment history, and amounts to the formulation of an impermissible lay medical opinion by the ALJ.

Because the ALJ erred in assessing Dr. Virgil's opinion, this matter should be reversed and remanded for further proceedings. On remand, the ALJ is instructed to comply with the applicable Social Security regulations in re-assessing this opinion evidence. The ALJ is further instructed to support his conclusions with specific references to the evidence of record and to comply with the Sixth Circuit's standard as enunciated in *Gayheart* in weighing Dr. Virgil's opinion. *See Gayheart*, 710 F.3d at 379 (ALJs must apply "the factors set out in 20 C.F.R. 404.1527(c) – supportability, consistency, specialization – when weighing" the opinions of consultative doctors).

Accordingly, plaintiff's first assignment of error is sustained.

21

2. Whether the ALJ's RFC formulation is substantially supported by the evidence of
   record.

Plaintiff asserts the ALJ's RFC formulation does not adequately reflect the limitations

imposed by her syncope and mental health impairments, particularly her stress-induced

pseudo-seizures which occur two to three times a month, which would preclude employment due

to absenteeism per the VE's testimony.   (Doc. 15 at 12-14).   Plaintiff's latter argument is

essentially a restatement of her claim that the ALJ erred by discounting Dr. Helm's opinion that

plaintiff's mental impairments preclude her ability to work due, in part, to her syncope and

pseudo-seizure episodes.   Because the Court has determined that the ALJ erred by failing to

properly assess Dr. Helm's opinion and that his stated bases for discounting it are not supported

by substantial evidence, plaintiff's second assignment of error is sustained in this regard.

Plaintiff further asserts the ALJ erred under *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504

(6th Cir. 2010), in formulating her RFC by failing to accommodate her limitations in attention

and concentration.   Here, the ALJ adopted the findings of the state agency reviewing

psychologists; determined that plaintiff had moderate difficulties in concentration, persistence, or

pace; and determined that plaintiff is "limited to simple, routine work with no more than

occasional changes in the work environment."   (Tr. 28).

The ALJ's RFC formulation is not supported by substantial evidenced because it fails to

accommodate plaintiff's moderate limitations in concentration, persistence, or pace.   In *Ealy*, the

Sixth Circuit held that where the medical opinion evidence establishes that a Social Security

claimant has specific pace, speed, and concentration limitations, the ALJ must include such

speed- and pace-based restrictions in his RFC formulation and in the hypothetical questions

posed to a VE.   *See Ealy*, 594 F.3d at 516-17.   *See also Edwards v. Barnhart*, 383 F. Supp.2d

920, 930-31 (E.D. Mich. 2005) (the ALJ's hypothetical question to the VE precluding all but

"simple, routine, unskilled work" failed to account for moderate limitations in persistence and

pace). This Court has likewise recognized that an ALJ's RFC formulation for simple, routine

jobs fails to account for moderate deficits in attention, concentration, persistence, and pace. *See*

*Ball v. Comm'r of Soc. Sec.*, No. 1:09-cv-684, 2011 WL 765978, at *4 (S.D. Ohio Feb. 25, 2011)

(recognizing Sixth Circuit authority that hypothetical omitting critical speed-based and

pace-based restrictions failed to properly and fully describe the plaintiff's RFC limitations);

*Herriman v. Apfel*, No. 99-cv-73489, 2000 WL 246598, at *2-3 (E.D. Mich. Feb. 11, 2000)

(hypothetical limiting the plaintiff to simple unskilled work with limited contact with the public

constituted error because it failed to take into account the plaintiff's deficiencies in

concentration); *Falconi v. Comm'r of Soc. Sec.*, No. 1:08-cv-622, 2009 WL 3790176, at *10

(S.D. Ohio Nov. 11, 2009) (limitations that the plaintiff was able to "perform simple, routine,

repetitive work in a low stress environment with no strict production requirement" did not

adequately address the limitation of "ability to complete a normal workday, to maintain attention

and concentration for extended periods, and to work within a schedule and maintain regular

attendance."). The ALJ's RFC formulation failed to accurately reflect plaintiff's mental

limitations as it did not account for her persistence and pace deficits. Plaintiff's second

assignment of error is therefore sustained.

### III. Conclusion

This matter is reversed and remanded pursuant to Sentence Four of § 405(g) for further

proceedings consistent with this Order. All essential factual issues have not been resolved in

this matter, nor does the current record adequately establish plaintiff's entitlement to benefits.

*Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).   On remand, the ALJ should,

consistent with this opinion, reevaluate the opinion evidence from Dr. Helm and Dr. Virgil in

accordance with Sixth Circuit case law and the Social Security regulations.   The ALJ must also

reassess plaintiff's RFC and properly account for her limitations in concentration, persistence and

pace.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner be

**REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C.

§ 405(g).

Date: _3/2/15_

Karen L. Litkovitz
United States Magistrate Judge

24